All right, the next case is Waichman v. Levin. And Jimmy Faircloth is here for the appellants. And Sandra Dugan is here for the appellees. And Mr. Faircloth, you may begin. Good morning, Your Honor. Jimmy Faircloth here for the appellants, who are six law firms that are before this court on appeal of a fee order that has a complicated procedural background. I won't go through it. I think the briefs lay it out pretty clearly for the court. To begin with, the relief we seek is reversal and dismissal because I think there are legal deficiencies that simply cannot be cured on remand. There's a critical timeline here that I'd like to point out a couple of the milestones in this case that I do think bear up on the legal issues. The first is the litigation was handled in a decade-long MDL in the Eastern District of Louisiana. There was no resolution of the claims that are before the court or the underlying claims that are before the court. All of these claims were remanded back to the Southern District of Florida for individual adjudication, not to be processed as a class, but for individual adjudication, which dramatically changed the paradigm, as the court might imagine, of the case. When they came back, we engaged, we, I on behalf of the six firms, engaged in over a year of negotiations with the Tashon defendants to arrive at a framework for providing an offer to 498 individual plaintiffs. We urged class counsel to participate in that process. They refused. They categorically refused to participate. When they found out that we had made progress and achieved an offer, they filed motions with the court to prevent us from going forward with those offers. They then negotiated in a mediation, a two-day mediation they accomplished in two days what they had not accomplished in 10 years, a quick resolution with the defendants, which essentially was created by the framework. Let me ask you this question, counsel. If class counsel is not entitled to be compensated for their contribution to the common fund, how do they get paid? They don't get paid, Your Honor, because there is no common fund here. They've gotten paid for all of their- They don't get any fees at all? Is that your argument? No, sir. Judge Fallon awarded them fees. All of their time on remand was fully compensated by Judge Fallon. This is a double payment scenario. They are not seeking fees for uncompensated work. They are seeking more fees for work for which they've already been paid. The Lodestar that they submitted to Judge Fallon, the MDL, is identical to the Lodestar time that was submitted to Judge Cook here. So it was class counsel who established jurisdiction over the defendants. They obtained default judgments that were essential to liability. And they filed the complaints. And they're not entitled to be compensated from the common benefit fund? There is no common benefit fund. They've been paid $226 million. $226 million, $190 something on the first part of the case, $28 million on the work in the second part of the case, which included their time on remand. They have been paid fully. Every moment of their time that they submitted to Judge Cook was compensated. That's the amount of the total award, although they got $24 million. They didn't get $279 million. That was the total settlement. They got $24 million. Well, they got $228 million for all their Chinese drywall work. You see, the first eight years through 2014 was the origination of this case. They were paid nearly $200 million from the first in fees. That was the common benefit award. It was a billion dollar settlement from which they got paid $190 something million in common benefit fees. That was the Knopf part of the case. The second half of the case, consider the Teishon part of the case. They got an additional $28 million in fees from Judge Fallon on this part of the case. So they have indeed been paid $226 approximate million in common benefit fees for all of their work on Chinese drywall. Okay, but on the second part of the case, I thought it was 24 million, but I'll accept that it was 28 million. Yes. That was looking at what the recovery was, which was around a couple of hundred million, right? That's correct, Your Honor. It was 26 or 28 million. All right, but there were 500 people that were not part of that. So it seems to me the question here is, aren't they entitled to something out of the money that those 490, I just say 500 to round it off. They've not been paid anything out of the money those 500 people got. That's correct. We can talk about whether they should or should not, but they have not received any money for out of the recovery. Forget whether it's a common benefit fund or something equivalent to it or whatever it is. They haven't received any money from the money recovered by those 500 people. Tell me the total amount of the money those 500 people ended up settling for. 500 people, Your Honor, settled for just at $40 million. Okay. So they got no money out of that 40 million. Is that correct? That is correct, Your Honor. Okay. So that's really what we're talking about. And we're talking about whether the work they got paid for in the rest of the case is in effect the same work that they did for these 500 people. I mean, when they were doing that work, they were doing it for those 500 and everybody else too. And I thought your claim was that, well, they've already been paid because the work they did for my 500 was work they did for everybody else or something like that. That's part of it, Your Honor. I think that's accurate. That is part of the case. Your Honor, what's important here, a couple of things are important. Number one, they severed their relationship with its 498 individual claimants, individual claimants that we represent. And of the 498, we negotiated a complicated offer. It was a settlement offer. When they found out about it, they obtained a stay and the stay prevented the perfection of any of these settlements. We understand all that. We're trying to decide your clients then, that group 498, I said 500, 498 got $40 million, right? Yes, Your Honor. Okay, and they helped get that $40 million. I mean, they did help lay the groundwork for your clients to get that 40 million, correct? I think that's accurate, Your Honor, yes. So the question is, should they be paid something for it? Well, and I think the answer is no, for two reasons. Number one, they severed their relationship with these plaintiffs when they excluded them from the class action. They literally washed their hands of these individuals before these individual settlement offers were accepted. And that is proven, that's not theoretical. One of the 498, Mary Ascuti, her claim is still in the district court and she's litigating alone. And so they washed their hands. People part ways all the time, but still the prior lawyer gets paid, has a lien on the file and gets some of the money for the work he did do or she did. I mean, I don't know what parting ways has anything to do with it. Well, in the state of Florida, for instance, Florida has a clear rule that if you terminate the relationship before the occurrence of the contingent event, you don't get any fee. So Florida has clear rule on this. And I would submit that's an equitable based rule. I'm not sure that's an accurate characterization. I mean, my understanding of the record is that it was terminated from your client's end, not from class counsel's end. And so I don't think that the Florida law applies in that situation. In addition, you are conceding that they laid the foundation to enable the settlement. So why shouldn't they be entitled to at least some attorney's fees as a result of it? Because they've been paid and we were prevented. They haven't been paid out of the monies that resulted in the, they haven't been paid anything with respect to the fees or the settlement that your clients received. So why wouldn't they be entitled to receive some fees in connection with that since it would have been impossible for your clients to have obtained the result they obtained without, for example, class counsel obtaining jurisdiction over the Tyshawn defendants and a number of other things that occurred in this case, the default judgment, et cetera. Why are they not entitled to any fees whatsoever that pertain to the results that your clients received? Because they don't have a legal basis for recovery. They have no contract, no statute, no legal basis that's been sanctioned by this circuit. They are asking for pure equity to give them some of the money. It is really that crude. And your honor, I can't emphasize enough how important it is that we signed a transfer agreement, giving up any claim we would have had in the MDL to participate in a common benefit request because we effectively created the framework that they relied on to settle the case. So there is no unjust enrichment. They're claiming we're unjustly enriched. How could we be unjustly enriched? As a part of this transfer from courts, we walked away from any claim in the common benefit of the MDL. So everybody has gotten paid here. There are no free riders. There is no unjust enrichment. And there is no- Counselor, your honor has expired. Thank you, your honor. All right. We'll hear from Ms. Dugan on behalf of the attorneys. Good morning. May it please the court. Sandra Dugan on behalf of class council. As the court is aware, we challenged the court's jurisdiction to hear this appeal, but we'd like to rest on our papers on that point to address the merits of this fee dispute between two groups of attorneys. There is no question that if it weren't for the efforts of common benefit council, a Florida individual settlement would not exist. Class council. Counsel. Yes. At the moment, I agree that class council is entitled to some fees, but what I'm less sure of is whether they're entitled to 60%, which is what your argument is. Now, and also with respect to the 45% that was actually awarded, you know, I'd like to hear what your position is with respect to whether there was enough said in the order awarding that to justify the 45%. Well, actually, your honor, we did originally ask for 60%, which is what Judge Fallon awarded us in the MDL, but we did not appeal Judge Cook's order of 45%. We accept her ruling and we feel that she did not abuse her discretion. There's ample evidence in the record for her ruling. She made specific findings that Judge Fallon's MDL order of 60% was persuasive and instructive. She referred to the Johnson factors and then she made these key findings. First, class council are credited with bringing the Chinese to the bargaining table to resolve the product liability action in the U.S. And this was an outstanding result. Taishan's lead counsel confirmed this finding at the fairness hearing on the global settlement. She proclaimed, this is a historic occasion. It's the first time that a Chinese company has settled with U.S. consumers in an American court under the global settlement. Taishan will pay thousands of homeowners, almost a quarter of a billion dollars. And Taishan added that this settlement was certainly forged after years of litigation and months of negotiation with able adversaries that zealously represented their clients' interests. And it was achieved in the context of ever-changing geopolitical dynamics. That's from the fairness hearing transcript in the MDL at rec doc 22505, pages 32 to 33. Judge Cook found that the FIS would not have been obtained without the benefit of class council's years of work. And class council exerted a great deal of time and labor that directly benefited the FIS clients. And this factor weighed heavily in favor of her fee award. Further, class council undertook a substantial risk of litigating this case on a contingency basis. And this is very important, class council's achievements in the global settlement increased the value of the Florida settlement by $12.85 million. The district court rejected the argument that we were already fully compensated. For the court's benefit, our load star for this portion of the case was in excess of $70 million. Judge Fallon awarded us $28 million. And he was aware that we would be seeking further fees with respect to this settlement when we appeared before the MDL court on this point. And as the court already pointed out, their original settlement in Florida was about 27 million. It increased to 40 million as a result of the most favored nations clause. And it's clear now looking back that there was no risk to individual counsel or those claimants in entering into the Florida settlement because with the protection of the most favored nations clause, if and when we settled our case for more money, they would reap the benefits. And as it turned out, the global settlement was a much better deal. Individual counsel profited from our efforts, yet they wanna pay us zero in common benefit fees even though their clients recoveries and their fees increased by 46%. Appellant's contentions here are similar to those of certain objectors in the diet drugs case who did not wanna pay a common benefit fee because they opted out of the global settlement before it was, they opted out before the settlement was reached. And they said, we didn't use the PMC's work product. And in rejecting those arguments, the Third Circuit recognized the MDL Leadership Council secured favorable discovery and evidentiary rulings that applied on a litigation wide basis in every MDL case against the defendant. And the defendant knew that plaintiffs had access to MDL common discovery. So all plaintiffs benefited in defendant's loss of bargaining power due to the leadership's efforts. Thus, the Third Circuit held those plaintiffs stood a better chance of recovery from the defendant than they would have absent the leadership's efforts. And the same is true here. Had we not established Taishan's liability for the drywall it manufactured, the FIS could not have occurred.  for remediation damages, that settlement would never have come to fruition. And had we not fought for the pivotal preclusive effect order in the district court, defendants would still be challenging the MDL's orders against them. There is a long history of common benefit fee jurisprudence that awards fees to court appointed leadership. The Fifth Circuit in Florida Everglades reiterated that a district court has the power to direct that a leadership committee and its council be compensated. And that requiring the payment to come from other attorneys is permissible. An MDL court has managerial authority. Cyprexa confirmed that MDL court has the power to determine leadership's fees in all federal cases, even those that are before other courts. And here, the individual defendants, the individual counsel, excuse me, benefited greatly from our services. Earlier in this case, Judge Fallon had entered a 17% hold back order. There was no objection from anyone. Judge Cook's fee order equates to approximately 14.4%. There's other cases where the percentage of an assessment is higher. So their argument that there's no common fund to pay these fees is wholly without merit. As they said in Florida Everglades, determination of whether a fund exists is a combination of traditional and pragmatic concepts centering around the power of the court to control the alleged fund. Here, the fund consists of the fees that are held in escrow pending the outcome of this appeal. And I'd like to address Mr. Faircloth's contention that somehow we've abandoned the clients. The bona fides of class counsel are unassailable. We did not abandon any plaintiffs, much less any Ameren class members. We would have preferred to settle on behalf of all the plaintiffs in one global settlement, but we were not given that option. The appellants filed formal objections to our ability at mediation to represent their clients' interests. And by the time we arrived at mediation, the defendants had already earmarked funds for the Florida settlement. Our negotiations for a global settlement were based on hard data. From our long experience in this case, over 10 years, we knew the strengths and the weaknesses of all plaintiffs' claims. Ethically, we could not dilute the value of every other plaintiff's claim by including the 498 unless we obtained more money. And the defendants were unwilling to pay additional money. And from the moment the Florida settlement was announced, we sought protection for these Ameren class members. All of the plaintiffs in the FIS were Ameren class members. That class was never decertified. And Judge Cook took it upon herself to stay execution of that settlement until she could satisfy herself that those class members were protected, that the information they had regarding the settlement offer was adequate. And so she stayed its execution. She noted that the duty of the court to protect those class members exists regardless of whether they're individual settlements or a class settlement. And we continued to prosecute the Florida settlement plaintiffs' remediation damages while all of these settlement proceedings were unfolding. And in the end, we included appellants' Brooke plaintiffs' claims, as well as all of their non-Florida Ameren plaintiffs' claims in the Florida settlement. They did not object to that. They did not object to our fees. They have failed to show an abuse of discretion by the district court. They're unhappy about the result, but the district court followed proper procedures in determining that 45% was a fair share of the fees earned. And the reason she awarded less than the 60% that Judge Fallon had ordered was because she found that individual counsel, in fact, spent, according to their claim, in excess of a year and still counting, negotiating the Florida settlement. So she gave them credit for that, but there's been no showing that any finding of fact was clearly erroneous. And we would suggest to the court that if you do find jurisdiction to hear this appeal, Judge Cook's order should be affirmed, and there should be an order that the common benefit fees have to be transferred to the MDL court registry for a ruling by Judge Fallon on its allocation. There are approximately 27 firms that have laid claims to these fees, and until that process is completed, we have no access to them, and we certainly have no authority to take that money for ourselves. Thank you. Thank you. All right, thank you, counsel. Thank you. Your Honor, a couple of points. Judge Erkoff has reserved some time. Yes, thank you, Your Honor. Your Honor, Judge Cook did not mention this, but it is so critical. In this case, we signed the transfer agreement, and I'm reading from it, out of the MDL. Settling attorneys agree to forever waive, discharge, release, and forego any and all objections to class counsel's petition, that's in the MDL, as well as any and all right and or claim for any common benefit fees arising out of the global settlement. We spent a year, a year, in complex negotiations in Atlanta and Miami and New Orleans. They refused to participate. We put this deal together. They, in two-day mediation, took what we had done and converted it, and I'm glad they did. I'm glad for the claimants they did that, but we walked away from any recovery in the MDL for all the work that we did putting this deal together. For them to claim that we're unjustly enriched somehow, when in fact they've been paid 200 and something million dollars for all of the Chinese drywall work, is an extraordinary statement. Your Honor, it is very important for the court to understand, we believe, that we did not object to their fees before Judge Fallin because we were precluded from objecting to their fees before Judge Fallin. We didn't participate in discovery regarding fees before Judge Fallin because we were precluded from doing that. To now use the findings from a proceeding where we were precluded from participating is a frontal assault on due process. We couldn't participate in the process. We couldn't build the record. We couldn't file objections. We couldn't make a claim, but yet now in the Southern District of Florida, we're basically, our rights are adjudicated based on that proceeding. I think that is clearly a denial of due process. How much attorney's fees did you receive out of the settlement of the 498 plaintiffs? I've got it right here in the brief, Your Honor. Just one second. Excuse me. It's 12,962,000 was the attorney's fee. And it varies because each firm had individual contracts and every payment was based on the individual relationship. Nothing was dealt with in the aggregate. Some firms had larger percentages. Some had smaller. Because of hardship, there were some variations that were made, but it's 12 million approximate fees that were paid on those recoveries. Your Honor, I also want to point out, we're not accusing class counsel of quote, abandoning the plaintiffs. And what we're telling you is they severed their representative authority. Whatever authority they had. When they negotiated the class deal to their exclusion, they severed their relationship. They terminated their relationship. And the status quo changed dramatically for these individuals. Because we wrote notice letters that were reviewed by Judge Cook that said your options are accept this offer. Here's what your recovery would look like or stay in the litigation and you'll continue to be a part of the class. Well, when they obtained the class settlement to the exclusion of these individuals, we had to turn around and then advise them, wait a minute, you now have to either accept this offer or you're gonna be alone without class representation. That event severed their representative. They now want to be paid. And this is the irony, which I have to state. Judge Cook's award is a higher per claim rate than awarded by Judge Fallon. That's the irony. We negotiated this deal. We put it together. We handed the platform to them and they're asking the court to award them more fees than Judge Cook did, than Judge Fallon awarded them for the $200 million deal they put together. It's invalid on its face. They have no clear authority to claim fees. They have been paid. The firms that I represent have been paid. Equity doesn't fit here. I submit to the court, this is taking the common benefit doctrine and kind of creating a slippery slope, excuse me, the common fund doctrine into the common benefit world where we're creating a rule is between lawyers. I'm sorry. You mentioned a little bit just a moment ago that by awarding 45%, Judge Cook has given them more in fees per claim on a percentage basis than in the claims that settled themselves. Is that what your position is? Yes, Your Honor. Okay, and how is that so? Well, if you just do the math, they were awarded approximately 11% in terms of common benefit fees against the total recovery of the class settlement, but yet Judge Cook's award gives them a net of greater than 14% against the total recovery here. So they literally got more relative to the whole take for the recovery from Judge Cook for claims they didn't settle than they did from Judge Fallon on claims they settled. And I submit to the court, Judge Fallon, he did not- I think your argument has expired. You can continue, counsel. Yes, I was gonna say that by not starting with the premise of what is the fund, this entire analysis broke down. There is no fund, and I submit there is no legal authority for fees in this instance. Thank you, Your Honor. All right, thank you, Mr. Faircloth and Ms. Dugan. We have your arguments. Thank you, Judge.